**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| DANIEL D. DORNEANU,       ) | |
|       ) | |
| Plaintiff,       ) | |
|       ) | |
| vs.       ) | No. 2:21-cv-01142-DCN-MHC |
|       ) | |
| GRACO INC. and GRACO MINNESOTA ) | **ORDER** |
| INC.,       ) | |
|       ) | |
| Defendants.       ) | |
| _____ ) | |

This matter is before the court on Magistrate Judge Molly H. Cherry's report and recommendation ("R&R"), ECF No. 46, that the court grant in part and deny in part defendants Graco Inc. ("Graco") and Graco Minnesota Inc.'s ("Graco Minnesota") (together, "defendants") motion to dismiss, ECF No. 39, and transfer the case to the United States District Court for the District of Minnesota. For the reasons set forth below, the court adopts the R&R and transfers the case.

## I.  BACKGROUND

Plaintiff Daniel Dorneanu ("Dorneanu") owns the right and titles of two separate patents: (1) U.S. Patent No. 10,426,980 (the "980 Patent"), titled "Smart Spray Foam Respiratory Mask," and (2) U.S. Patent No. 10,427,703 (the "703 Patent"), titled "Remote Monitoring and Reporting for Mobile Plural Component Manufacturing Rigs" (together, the "Patents"). ECF No. 36, 2d Amend. Compl. ¶ 18. The Patents were duly and legally issued in October and September of 2019, respectfully. Id. According to Dorneanu, the Patents protect "the intellectual property for modification of parameters of a Spray Polyurethane proportioner within a mobile rig using a mobile application" and

1

"were written to . . . benefit the safety, efficiency, and performance of the spray foam insulation application industry in the US, for any and all brands of spray foam insulation application equipment manufacturer." Id. ¶¶ 19, 27. Dorneanu further asserts that the technology described in the Patents "is not well understood, conventional, routine, or generic." Id.

Defendants are involved in the installation and use of spray foam rig equipment. Graco Minnesota is a subsidiary of Graco. Among other products, Graco develops and markets its "Reactor" line, which is a series of spray polyurethane foam equipment. In early 2017, Graco allegedly became aware of the provisional applications for the Patents, along with the intellectual property described therein. Soon after, Dorneanu and Graco discussed a potential business agreement in which Graco would be allowed to use the technology in the Patents, but no agreement was ever reached. In June 2017, Dorneanu began selling a mobile application, called "JobSight," that used the technology described in the Patents and was intended to be compatible with all types of spray foam machine models, including Graco products. In October of the same year, Dorneanu began selling another mobile application, called "Sky," also using the Patent technology.

Following the release of JobSight, Graco allegedly wrote to its distributors and customers that using JobSight in connection with one of Graco's products could potentially have negative and disadvantageous effects on the products. Further, Graco claimed it would soon produce an app that would allow a smartphone to safely operate Graco products. Subsequently, Graco altered its patent application—No. 14/766,712, titled "Remote Monitoring for Fluid Application System"—which was in the examination phase with the United States Patent and Trade Office ("USPTO"). Graco introduced an

independent patent claim—Claim 17—which allegedly described technology that was

similar to that described in Dorneanu's Patents.  The USPTO eventually granted Claim

17.  Then, in 2018, Graco developed a mobile application, called the "Reactor app,"

which Dorneanu alleges uses similar technology as JobSight and Sky and infringes on the

technologies described in the Patents.  In 2019, Graco released another application, the

"Reactor Connect," which had a similar functionality.  Dorneanu alleges that Graco has

used Claim 17 to intimidate him and other competitors out of the use of their products,

including Dorneanu from selling JobSight, in an attempt to form a "monopoly" on spray

foam application products in the United States.  Id. ¶ 43.

In 2019, after Graco sent a cease-and-desist letter to Dorneanu regarding

JobSight, a Graco representative traveled to Charleston, South Carolina to meet with

Dorneanu.  Dorneanu alleges that during these meetings, the Graco representative

pressured him into releasing a product technical package system for Graco's evaluation

without requiring Graco sign a non-disclosure agreement ("NDA") or other similar

agreement.  Dorneanu alleges that he has been subjected to other forms of intimidation as

well.  Because of these alleged actions, Dorneanu claims he was forced to stop selling

JobSight on the market.

On April 19, 2021, Dorneanu, proceeding pro se, filed the instant action against

defendants.  ECF No. 1.  On June 7, 2021, Dorneanu filed an amended complaint.  ECF

No. 20.  On December 3, 2021, Dorneanu filed a second amended complaint.  2d Amend.

Compl.  The second amended complaint, now the operative complaint, asserts nine

causes of action.[1]  Id.  Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil

Rules 73.02(B)(2)(g) (D.S.C.), all pretrial proceedings in this case were referred to

Magistrate Judge Cherry.

On December 17, 2021, defendants filed a motion to dismiss for failure to state a

claim and for improper venue.  ECF No. 39.  On January 19, 2022, Dorneanu responded

in opposition.  ECF No. 42.  Defendants replied on January 26, 2022, ECF No. 44, and

Dorneanu filed a sur-reply on February 8, 2022, ECF No. 45.  On May 13, 2022,

Magistrate Judge Cherry issued the R&R, recommending that the court grant in part and

deny in part the motion to dismiss and transfer the case to the District of Minnesota.  ECF

No. 46, R&R.  On May 31, 2022, Dorneanu filed his objections to the R&R.  ECF No.

49.  Defendants did not file objections but responded to Dorneanu's objections on June

14, 2022.  ECF No. 51.  Dorneanu did not file a reply, and the time to do so has now

elapsed.  As such, the matter is now ripe for the court's review.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the

Magistrate Judge's R&R to which specific, written objections are made.  28 U.S.C.

§ 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of

the Magistrate Judge.  See Thomas v. Arn, 474 U.S. 140, 149-50 (1985).  The

recommendation of the Magistrate Judge carries no presumptive weight, and the

---

[1] The causes of action are: (1) infringement of Claim 1 of the 703 Patent, (2) infringement of Claim 4 of the 703 Patent, (3) infringement of Claim 1 of the 980 Patent, (4) tortious interference and violation of a 2013 consent order from the FTC, (5) violation of the federal Anti-Competitive Practices Act, (6) intellectual property theft, (7) defamation, (8) duress, and (9) intentional infliction of emotional distress.  2d Amend. Compl.

responsibility to make a final determination rests with this court.  Mathews v. Weber, 423

U.S. 261, 270-71 (1976).  However, de novo review is unnecessary when a party makes

general and conclusory objections without directing a court's attention to a specific error

in the Magistrate Judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th

Cir. 1982).  In the absence of a specific objection, the court reviews the R&R only for

clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir.

2005) (citation omitted).

      Plaintiff is proceeding pro se in this case.  Pro se complaints and petitions should

be construed liberally by this court and are held to a less stringent standard than those

drafted by attorneys.  See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert.

denied, 439 U.S. 970, 99 (1978).  A federal district court is charged with liberally

construing a complaint or petition filed by a pro se litigant to allow the development of a

potentially meritorious case.  See Hughes v. Rowe, 449 U.S. 5, 9 (1980).  Liberal

construction, however, does not mean that the court can ignore a clear failure in the

pleading to allege facts that set forth a cognizable claim.  See Weller v. Dep't of Soc.

Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

### III.   DISCUSSION

      In their motion to dismiss, defendants moved to dismiss the second amended

complaint in its entirety for failure to state a claim upon which relief may be granted and

for improper venue.  Graco also requested, "[i]n the alternative," that the court exercise

its discretion under Rule 12(b)(3) and 28 U.S.C. § 1406(a) and transfer the case to the

District of Minnesota.  ECF No. 39-1 at 2.

In evaluating venue, the Magistrate Judge first separated Dorneanu's causes of

actions into patent claims and non-patent claims due to the different venue rules

governing each type of claim.  The Magistrate Judge ultimately determined that the

District of South Carolina was an improper venue for all Dorneanu's claims.  After

concluding that venue was improper, the Magistrate Judge further recommended that the

court transfer the action in the interests of justice.  Finally, since the Magistrate Judge

concluded that transfer would be appropriate, the Magistrate Judge declined to address

defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6).  Dorneanu

raises three objections to the R&R.  First, Dorneanu contends that venue is proper for the

patent claims because two companies that were defendants' agents are incorporated in

South Carolina, and as such, defendants may be said to have committed their acts of

infringement in the state.  Second, Dorneanu argues that venue is proper for the non-

patent claims because a substantial part of the events giving rise to the claims occurred in

South Carolina and a substantial part of the property that is the subject of the claims is

situated in South Carolina.  Finally, Dorneanu seeks to amend the complaint to add the

two aforementioned companies as defendants, and he argues that venue would thus

become proper.  The court considers each objection in turn.

### A.  Venue for Patent Claims

Counts I, II, and III in the second amended complaint allege that Graco infringed

upon Dorneanu's patents.  For patent infringement claims, "venue is exclusively

governed by the patent venue statute, 28 U.S.C. § 1400(b), which is interpreted in

6

accordance with Federal Circuit law." NetSoc, LLC v. Chegg Inc., 2019 WL 4857340, at

*2 (S.D.N.Y. Oct. 2, 2019) (citing TC Heartland LLC v. Kraft Foods Grp. Brands LLC,

137 S.Ct. 1514, 1517 (2017)).  The patent venue statute provides that venue is proper "in

the judicial district where the defendant resides, or where the defendant has committed

acts of infringement and has a regular and established place of business."  28 U.S.C.

§ 1400(b).  For purposes of patent infringement, a corporate defendant resides in its state

of incorporation.  TC Heartland, 137 S.Ct. at 1517.  "[I]n determining whether a

corporate defendant has a regular and established place of business in a district, the

appropriate inquiry is whether the corporate defendant does its business in that district

through a permanent and continuous presence there."  In re Cordis Corp., 769 F.2d 733,

737 (Fed. Cir. 1985).  The plaintiff bears the burden of establishing proper venue.  Butler

v. Ford Motor Co., 724 F. Supp. 2d 575, 586 (D.S.C. 2010).

        Here, there is no dispute that both Graco and Graco Minnesota are incorporated in

the State of Minnesota.  See 2d Amend. Compl. ¶¶ 2–3.  Therefore, for venue to be

proper, Dorneanu must prove that defendants committed acts of infringement in South

Carolina and have a regular and established place of business here.  In the R&R, the

Magistrate Judge assumed, for purposes of the motion, that the alleged infringement

occurred in South Carolina because defendants did not address the requirement.

However, the Magistrate Judge concluded that neither Graco entity has a regular and

established place of business in the district.  To determine whether defendants have a

regular and established business in South Carolina, the Magistrate Judge relied upon the

Cray factors, as set forth in In re Cray Inc., 871 F.3d 1355, 1360 (Fed. Cir. 2017).  Under

those factors, a plaintiff must demonstrate each of the following: "(1) there must be a

7

physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." Id. at 1360.

In both the second amended complaint and the response to defendants' motion to dismiss, Dorneanu asserted that defendants have a regular and established place of business in South Carolina because they maintain agents in the state. Dorneanu's first objection focuses on the same argument. Specifically, Dorneanu averred that two of defendants' agents, Junction Crew Holdings, LLC ("Junction Crew") and Air Power, Inc. ("Air Power"), are located in Greer and Greenville, South Carolina, respectively. The Magistrate Judge rejected this argument, finding no evidence that Junction Crew and Air Power are anything more than third-party retailers or distributors of defendants' products. In his objections, Dorneanu argues that Junction Crew and Air Power are indeed "agents" because they owe fiduciary duties to defendants. ECF No. 49 at 9–10. Dorneanu ostensibly presents this argument based on caselaw, referenced by the Magistrate Judge, holding that "a 'regular and established place of business' requires the regular, physical presence of an employer or other agent of the defendant conducting the defendant's business at the alleged 'place of business'" and that an agency relationship is "a fiduciary relationship that arises when one person (a 'principal') manifests assent . . . that the agent shall act on the principal's behalf and subject to the principal's control." In re Google, 949 F.3d 1338, 1345 (Fed. Cir. 2020) (emphases added).

Critically, the discussion of agency in Google pertains to the second of the three Cray factors only. But to show that defendants have a regular and established business in the district, Dorneanu must satisfy all three of the Cray factors. In other words, whether defendants have satisfied the Cray factors does not hinge solely on whether Junction

Crew or Air Power are defendants' agents.  Even if the court were to assume, for

Dorneanu's benefit, that Junction Crew and Air Power were indeed defendants' agents,

Dorneanu would still have to show that those agents conducted business at a physical

place <u>of the defendants</u>.  <u>See Cray</u>, 871 F.3d at 1360 (holding that the physical place must

be a place of the defendant, not solely of the defendant's employee); <u>Duke Univ. v.</u>

<u>Sandoz</u>, 2018 WL 11016705, at *2 (D. Colo. Nov. 13, 2018) (noting that the physical

place refers to the place of the defendant "rather than of the defendant's employees or

agents").  Therefore, although the court expresses doubt as to whether defendants had the

right to direct or control the employees of Junction Crew or Air Power such that they

were "agents,"[2] the court need not resolve the issue to decide the motion.  Dorneanu does

not object to the Magistrate Judge's findings that defendants do not have a physical place

of business of their own in the district and do not "own, lease, or exercise other attributes

of possession or control over Junction Crew or Air Power's physical place[s] of

business."  R&R at 13.  In the absence of any additional argument or evidence to the

contrary, the court reaches the same conclusion.  Accordingly, the court finds that based

on the patent venue statute and the relevant Federal Circuit caselaw, venue is improper in

South Carolina.

---

[2] For example, Dorneanu argues that "[i]n 2013, the [FTC] found Graco guilty of treating all 'distributors' as 'agents.'" ECF No. 49 at 11.  The court has reviewed the FTC order and finds that Dorneanu is mistaken.  Dorneanu refers to a consent agreement between the FTC and Graco. <u>See</u> <u>Graco Inc.</u>, 155 F.T.C. 665 (2013).  The consent agreement reflected a settlement over claims that Graco acquired its two primary competitors, which limited the ability of third-party distributors to sell fast-set equipment manufactured by anyone other than Graco. <u>See</u> Graco Inc., 78 Fed. Reg. 24,201 (FTC Apr. 24, 2013) (analysis of agreement containing consent order).  However, nothing in the consent order or agency decision suggests—as Dorneanu argues—that Graco treats or treated those distributors as agents.

### B. Venue for Non-Patent Claims

Next, the court turns to the propriety of venue for Dorneanu's non-patent claims.

The question of whether venue is proper for such claims is governed by 28 U.S.C.

§ 1391(b), which states that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

For the purposes of venue, a business entity is "deemed to reside, if a defendant, in any

judicial district in which such defendant is subject to the court's personal jurisdiction

with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Like under the

patent venue statute, the plaintiff bears the burden of proving that venue is proper.

Symbology Innovations, LLC v. Lego Sys., Inc., 282 F. Supp. 3d 916, 925 (E.D. Va.

2017) (citations omitted).

In his response to the motion to dismiss, Dorneanu did not raise the issue of

whether defendants were subject to the court's personal jurisdiction such that they may

be said to reside in the district for venue purposes. As a result, the R&R did not consider

that issue. Instead, the Magistrate Judge turned to § 1391(b)(2) and determined that the

substantial events or omissions giving rise to Dorneanu's claims did not occur in South

Carolina. First, the Magistrate Judge looked to Counts IV, V, and VII of the second

amended complaint, which arise out of allegations that defendants contacted their

distributors and released a bulletin to their customers to inform them of negative and

disadvantageous effects of using Dorneanu's JobSight application.  In response,

Dorneanu argues that "the act of intimidation of the [] Distributors, although themselves

located in Districts other than South Carolina," were done with the overall purpose of

"stop[ping] Plaintiff from doing business in the District of South Carolina."  ECF No. 49

at 13.  Dorneanu similarly argues that the alleged defamatory statements were made with

the intent to cost Dorneanu business in South Carolina.  In other words, Dorneanu argues

that a substantial part of the events took place in the district because Dorneanu

purportedly lost his customers in South Carolina.

Section 1391(b)(2), however, does not traditionally contemplate looking to where

the effects of the underlying actions occur.  "In determining whether venue is proper

under this provision, the Court looks to the defendant's conduct and where that conduct

took place."  Lalla v. G&H Towing Co., 2019 WL 11626516, at *4 (W.D. Tex. July 26,

2019) (citing Brush Creek Trading Co. v. Zoes, 2006 WL 1169577, at *1–3 (W.D. Tex.

Apr. 13, 2006)).  "[T]he fact that a plaintiff residing in a judicial district feels the effects

of a defendant's conduct in that district does not mean that the events or omissions

occurred in that district."  Id. (citing Bigham v. Envirocare, 123 F. Supp. 2d 1046, 1048

(S.D. Tex. 2000)); see also Story v. Republic Bank, 13 F. Supp. 3d 483, 492 (W.D. Pa.

2014) ("It is not the conduct of [the plaintiff] which gives rise to the claims in this

litigation; it is Defendant's conduct and its actions . . . ."); Religious Insts. Ins. All. v.

Willis Ins. Servs. of San Diego, Inc., 2005 WL 8159095, at *4 (W.D. Mo. Dec. 6, 2005)

(explaining that looking to the venue where the plaintiff felt the effects of the defendant's

conduct or omissions "is not the test").[3]  Dorneanu also argues that a substantial part of

the property that is the subject of the action is situated in the district because his sales and

market share may be considered property.  However, Dorneanu does not point to any

authority—and the court has found none—indicating that "sales" or "market share" may

be considered property for purposes of the venue analysis.  Therefore, the court overrules

Dorneanu's objections as to the propriety of venue for Counts IV, V, and VII.

The Magistrate Judge further recommended that the court find that venue is

improper for Count VI, which alleges intellectual property theft, because the claim is

based on actions before the USPTO.  The USPTO maintains its principal office in

Alexandria, Virginia.  Michilin Prosperity Co., Ltd v. Dudas, 2007 WL 2225890, at *2

(D.D.C. July 31, 2007).  In his objections, Dorneanu reiterates his argument from his

response that his trade secrets are located in and were stolen from South Carolina.  Even

so, Count VI in the second amended complaint is most plainly read as focusing on

Graco's "prosecution process" for amending Claim 17 of its patent application and

whether Graco "[i]ntroduced new subject matter" taken from Dorneanu's intellectual

property as part of the process.  2d Amend. Compl. ¶¶ 106–07.  Dorneanu fails to object

to the Magistrate Judge's conclusion that a substantial part of the events giving rise to

this cause of action occurred before the USPTO.  In the absence of any such argument,

the court finds that Graco's alleged conduct underlying the claim occurred in Virginia,

and venue is therefore improper as to Count VI.

---

[3] Some courts have applied the principle that where a plaintiff sues a state official
or challenges a state-wide policy, venue is proper in the jurisdiction where the effects of
decision are felt.  See Ansley v. Warren, 2016 WL 5213937, at *8 (W.D.N.C. Sept. 20,
2016) (citing Cent. Valley Chrysler-Jeep, Inc. v. Witherspoon, 2005 WL 2709508, at *6
(E.D. Cal. Oct. 20, 2005)).  However, that "exception" does not apply here.

Finally, the Magistrate Judge recommended that the court conclude that venue is improper for Counts VIII and IX.  These causes of action arise, in part, out of Dorneanu's allegations that a representative from Graco visited Dorneanu in South Carolina on two occasions, allegedly to pressure Dorneanu into releasing a product technical package system without the use of an NDA.  The Magistrate Judge acknowledged that under Counts VIII and IX, those events "clearly took place in the District of South Carolina." R&R at 16.  However, the Magistrate Judge observed that the complaint also alleges that defendants communicated with Dorneanu "from out of state on various occasions in writing and over the phone," improperly amended Claim 17 of its patent application before the USPTO, and accused JobSight of infringing upon Graco's patent from out of state.  Id. at 17.  Based on those other allegations, the Magistrate Judge concluded that "most of the events occurred in Minnesota . . . or before the USPTO."  Id.

In his objections, Dorneanu cites a case from the Middle District of North Carolina in support of the proposition that home visits made for the purpose of harassment or intimidation are sufficiently substantial to support venue.  See McClinton-Wallace v. Chapple-Brown, 2021 WL 1648652, at *3 (M.D.N.C. Apr. 27, 2021).  But in McClinton-Wallace, the claim at issue directly related to whether the defendant had called local authorities on the plaintiff for the purpose of harassing and intimidating him. Here, Dorneanu's causes of action for duress and intentional infliction of emotional distress are far broader, encompassing numerous alleged "[i]ntimidation tactics" beginning in 2017.  2d Amend. Compl. ¶ 127.  McClinton-Wallace is clearly distinguishable, and beyond that case, Dorneanu fails to object to the R&R's conclusion that of the multiple forms of intimidation alleged in the complaint, a substantial portion

of them took place outside of South Carolina.  The court therefore overrules Dorneanu's

objection and adopts the Magistrate Judge's recommendation to hold that venue is

improper for the last two causes of action in the complaint.  As a result, the court finds

that venue is improper as to all counts.

### C.  Third Parties

In his third and final objection, Dorneanu argues that Junction Crew and Air

Power are liable for the same claims asserted in Counts I–III of the second amended

complaint because they violated 35 U.S.C. § 271, which prohibits, inter alia, anyone from

"offer[ing] to sell[] or sell[ing] any patented invention."  ECF No. 49 at 15.  Additionally,

Dorneanu seeks to add a new claim, "Count X," alleging that defendants, Junction Crew,

and Air Power "conspired under a general agreement to block and to obtain Plaintiff's

market shares in South Carolina."  Id.  As a result, Dorneanu requests that the court

evaluate his objections in light of the fact that he "submitted his Motion for Leave to

Amend Complaint to include Air Power [] and Junction Crew" as defendants.  Id.

(referencing ECF No. 50).  In their response to the objections, defendants argue that

Dorneanu relies on "new 'content' included in his [third] Motion to Amend" and that

such arguments are not proper objections to an R&R and should be disregarded.[4]  The

court agrees.  The motion to amend was not before the Magistrate Judge at the time the

R&R was issued.  As such, the court need not credit the motion to amend as part of the

objections to the R&R.  See Heggem v. Steffener, 2008 WL 3540220, at *1 (W.D. Wash.

Aug. 11, 2008) (declining to consider a motion to amend the complaint filed after entry

---

[4] Additionally, to the extent that Dorneanu presented arguments that relied on his proposed amended complaint in support of his first two objections, the court has not considered them for the same reasons.

of an R&R).  This decision is reinforced by the principle that courts should look

disfavorably on motions to amend brought for the purpose of circumventing dispositive

motions.  See, e.g., Sandcrest Outpatient Servs., P.A. v. Cumberland Cnty. Hosp. Sys.,

Inc., 853 F.2d 1139, 1149 (4th Cir. 1988) (affirming denial of a motion to amend in part

because "the proposed amendment appears to have been an after-thought by appellant,

possibly prompted only by the concern that it would lose on the summary judgment

motion").  Although Dorneanu is a pro se litigant, the court cannot ignore a clear failure

to abide by certain fundamental principles underlying the Federal Rules of Civil

Procedure and allow him to amend his complaint for the third time.[5]

Having determined that venue is improper in the District of South Carolina, the

court turns to the Magistrate Judge's recommendation that the court transfer the case to

the District of Minnesota.  "For the convenience of parties and witnesses, in the interest

of justice, a district court may transfer any civil action to any other district . . . where it

might have been brought or to any district . . . to which all parties have consented."  28

U.S.C. § 1404(a).  The burden is on the moving party to show by a preponderance of the

evidence "that transfer to another forum is proper."  State Farm Fire & Cas. Co. v.

Blanton, 2014 WL 7146980, at *2 (D.S.C. Dec. 15, 2014) (citations omitted).  The

decision to transfer a case to another venue is "committed to the discretion of the district

court," In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984) (citations omitted),

requiring the court to undertake "an individualized, case-by-case consideration of

---

[5] If Dorneanu wishes to argue that a third amendment would be supported by good cause, he may do so in the District of Minnesota, which, as discussed immediately below, is where this action now belongs.

15

convenience and fairness" and "to weigh in the balance a number of case-specific factors," Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citation omitted).

Dorneanu does not object to the Magistrate Judge's recommendation that the court transfer the matter if it finds that venue is improper as to all claims.  The court finds no clear error in the Magistrate Judge's determination that the balance of the convenience and interests of justice factors support transfer in this case.  Therefore, the court transfers this case to the District of Minnesota.

## IV.   CONCLUSION

For the foregoing reasons, the court **ADOPTS** the R&R, **GRANTS IN PART** and **DENIES IN PART** the motion, and transfers this case to the District of Minnesota.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 8, 2022**
**Charleston, South Carolina**

16